## Mulligan et al. v. Phelps Construction Co.

(Decided Nov. 26, 1935.)

B. J. BETHURUM and C. N. HOBSON for appellants.

BEN V. SMITH and CLIFFORD E. SMITH for appellee.

OPINION OF THE COURT BY JUDGE RICHARDSON—Affirming.

J. F. Mulligan, E. M. Mulligan, and J. W. Howard are appealing from a judgment of the Pulaski circuit court entered at the special December term, December 30, 1933, insisting that the case was tried tempo accelerando. Thus they were accorded rough justice.

Sustaining this insistence, they earnestly urge that the cause did not stand for trial at the time the judgment was rendered and it is not sustained by the evidence.

The Phelps Construction Company, a corporation, during the years 1931, 1932, and 1933, engaged in constructing highways under contracts with the State Highway Commission. It was the owner, and in possession, of road machinery and equipment which it employed in its business. The Mack Construction Company was the owner of a gasoline shovel, Monarch road grader, Sullivan air compressor, and jackhammers which came into the hands of J. C. Strong, who sold same to Mrs. E. M. Mulligan. Her husband, J. F. Mulligan, superintended, for her, the purchase of the machinery at the price of $4,500, of which $1,500 was paid in cash, and four notes, each for $750 payable in one, two, three, and four months. At the time they executed and delivered them to Strong, he executed and delivered a bill of sale for the machinery, retaining a lien thereon to secure the payment of the four $750 notes. The Mulligans were experienced in the construction of roads and had engaged in road construction for a number of years prior to the purchase of this machinery. They were, however, without means with which to meet the payments of the four $750 notes of Strong, as they matured. To enable them to meet their payments, J. F. Mulligan, for himself and E. M. Mulligan, entered into an oral contract with the Phelps Construction Company, whereby he was to receive, for his services as superintendent of the construction of roads by the Phelps Construction Company, $250 to be paid him monthly. The salary was paid and it is not here involved. As a part of the same contract he turned over to the Phelps Construction Company the Strong machinery which was used by it in the construction of roads from the 6th day of March, 1931, until the 1st day of April, 1933, a period of 24 months and 24 days.

One issue to be determined on this appeal arises out of the Mulligans' claim against the Phelps Construction Company for the latter's use of this road machinery.

The Mulligans contend that it was rented to the Phelps Construction Company and it was to pay them a reasonable rental. The Phelps Construction Company insists that the use of the machinery was to be paid for by it on a percentage basis; i. e., that the machinery which it owned and the Strong machinery were to be used conjointly in constructing roads, and the Mulligans were to be paid for the use of Strong's machinery a portion of the net profit derived by the corporation in the construction of roads under its contracts with the State Highway Commission. The Phelps Construction Company's earnings were less than its expenses; therefore, nothing could be or was paid to the Mulligans, or any one for them, on a percentage basis. As Strong's notes matured he demanded payment, and the Phelps Construction Company, with the consent of the Mulligans, paid them, with interest. After it was ascertained that the Phelps Construction Company had lost money when executing its contracts for the construction of highways during the period of time the Strong machinery was used by it, it caused Strong to indorse the notes to it. The same not being paid, this action was filed to recover of the Mulligans the face of the four notes with interest, and enforce a lien on the Strong machinery to satisfy the same.

In bringing the action, counsel of the Phelps Construction Company prepared the petition on the theory that the road machinery in controversy was jointly owned by the Phelps Construction Company and the Mulligans. Later, an amended petition was filed by new counsel of the Phelps Construction Company, in which appropriate allegations were made to recover of the Mulligans "the face of the Strong notes with interest, to enforce a lien on," and to sell the machinery to satisfy them. The Mulligans counterclaimed, charging that the machinery was rented to the Phelps Construction Company and that it was to pay E. M. Mulligan a reasonable rental for same and it was used by it in the construction of roads from March, 1931, until April 1 1933, which they averred was reasonably worth the sum of $17,360. The answer setting up their counterclaim was filed May 5, 1933. A reply thereto was filed July 3, 1933. This completed the issue as to the Mulligans. The Phelps Construction Company's amended petition, containing the allegations upon which it sought to recover on the Strong notes, was filed May 9, 1933. J. W. Howard was made a defendant in the action of the Phelps

Construction Company against the Mulligans. He filed an answer the 5th day of May, 1933.

The bill of sale of Strong to E. M. Mulligan was executed and delivered March 5, 1931, in which a lien was retained to secure the payment of the four $750 notes. It was recorded May 4, 1931. In his answer, Howard claimed on the Strong machinery to secure $2,000, owing him by E. M. Mulligan, a lien under a bill of sale executed and delivered by her to him April 1, 1933, or 2 years and 26 days after the instrument evidencing Strong's lien to secure the four $750 notes was recorded in the clerk's office in the county in which the Mulligans resided at the time it was executed and delivered to them by Strong. Howard charged in his answer that by virtue of the Mulligans bill of sale to him, he had a lien on the Strong machinery "superior to all other liens to secure the $2,000.00 owing to him by E. M. Mulligan."

During the pendency of the action a motion was entered to require the Phelps Construction Company to elect whether it would prosecute its cause of action stated in its original, or in its amended, petition. It elected "to rely upon the amended petition and dismissed the original, in so far as it was inconsistent with the amended, petition." It filed a demurrer to the answer of Howard. Without waiting for the court's ruling thereon, it filed a reply to his answer, denying his lien was superior to that of the Phelps Construction Company. This reply was filed at the special call term, December 23, 1933.

The depositions of E. M. Mulligan, J. F. Mulligan, C. E. Donovan, and Clauda Sagaser were taken the 27th day of December, 1933, to establish E. M. Mulligan's counterclaim.

Later, by an agreement, E. M. Mulligan and J. F. Mulligan were cross-examined by the Phelps Construction Company.

The depositions of D. M. Phelps, Joe H. Gibson, Onie P. Hamilton, and W. E. Fisher were taken by the Phelps Construction Company to disprove E. M. Mulligan's counterclaim.

The Phelps Construction Company, at the October term, 1933, entered a motion supported by an affidavit, for a submission of the cause for trial and judgment.

E. M. Mulligan resisted the motion. It was overruled; the cause continued and was set down for trial at the special December term, 1933. This order imposed upon the parties terms "to prepare for trial" at the special December term, with directions that the Mulligans complete the taking of their depositions within 15 days, and the Phelps Construction Company within 15 days, thereafter. The order contains this statement: "This action will be submitted at said special term." At the special December term, the Phelps Construction Company again entered a motion for submission supported by affidavit of counsel. On December 29, 1933, at the special term, the cause was submitted for trial, when judgment was rendered in accordance with the prayer of the Phelps Construction Company's petition, and E. M. Mulligan's counterclaim, dismissed. The lien of the Phelps Construction Company was adjudged prior and superior to Howard's.

We will consider the Mulligans counterclaim in the light of the evidence adduced.

E. M. Mulligan admitted that she had no knowledge or information of the terms of the contract entered into by J. F. Mulligan, for her, and the Phelps Construction Company, concerning the rental of the Strong machinery. J. F. Mulligan did not undertake to state the terms of the rental contract. Indeed, his testimony bearing on this contract, its terms and provisions, is too indefinite, uncertain, and meager to be convincing that such a contract was entered into by him and the Phelps Construction Company. Donovan and Sagaser merely expressed their opinions as to the reasonable rental value of like machinery, if new. The evidence in behalf of the Phelps Construction Company is clear, unequivocal, and convincing. It establishes that the machinery was used by it under an arrangement with J. F. Mulligan, by which it was agreed that for its use the Phelps Construction was to pay E. M. Mulligan a percentage of the profit earned under its contracts with the State Highway Commission in the construction of roads by the use of its own machinery and the Strong machinery.

The testimony of D. M. Phelps, respecting the terms of the contract between the Phelps Construction Company and J. F. Mulligan, and its use of the machinery in the construction of roads, is abundantly corroborated by the testimony of the bookkeeper of the Phelps Con-

struction Company; indeed, by that of J. F. Mulligan. Fisher's testimony shows that J. F. Mulligan frequently examined the books of the corporation and ascertained and knew its monthly income and expenses; also, monthly statements were made out by Fisher and furnished him. They showed the exact status of each month's business of the corporation. J. F. Mulligan admitted these statements were furnished him monthly and that they showed the monthly condition of the corporation's business. The evidence fully authorized, and sustains, the judgment dismissing E. M. Mulligan's counterclaim. No other defense was made to the four $750 notes or any part thereof.

Near the close of the special December term, 1933, the Phelps Construction Company requested the court to submit the cause for trial and judgment. In resistance of the motion, E. M. Mulligan filed her affidavit in which she stated that the issues had not been completed 30 days before the commencement of the special term and that under section 367a-5, Civ. Code Prac., the cause did not stand for trial; one of her counsel had been constantly engaged in the practice of law in the Pulaski circuit court, and the other in the discharge of his official duties as county judge and in the practice of law at Lexington; her husband was engaged in the business of a contractor, and thereby had been prevented taking the necessary steps to prepare the cause for trial. The motion to continue was overruled, the cause submitted for trial and judgment, and the judgment entered. Later, an affidavit was filed which the court treated as a motion to set aside the judgment and overruled the latter.

As to the Mulligans, the issues had been made up since July 3, 1933, when the Phelps Construction Company's reply was filed to her answer.

Howard is here arguing that as to him, the issue between him and the Phelps Construction Company was not completed until the reply to his answer was filed December 23, 1933. As we have noted, this reply merely denied his lien was superior to that of the Phelps Construction Company. The date of the Strong bill of sale under which the Phelps Construction Company, admittedly, had a lien on the machinery to secure the payment of the four $750 notes, the date of its recordation, and the date of Howard's bill of sale under which he asserted a lien, determined the priority of their liens.

The allegation in Howard's answer that his lien was superior to that of the Phelps Construction Company was no more than his opinion of the legal effect of the instruments under which they asserted their respective lien. No reply to the answer was needed or required to enable the court properly to adjudicate, on the face of the pleadings and exhibits, the priority of their respective lien. Jackson v. Jackson (La. App.) 163 So. 175.

Viewing the rights of the parties in the light of the record, as we have reproduced it, it is very plain that the court properly sustained the motion to submit the cause for trial, tried, and entered the judgment at the special December, term. It is true that the court proceeded, despite the protest of the Mulligans, to submit, try, and adjudicate the issues made by the pleadings on the evidence adduced. The mere fact that they then protested, and Howard, who requested no continuance, now joins therein, against the action of the court, is wholly insufficient to sustain the charge made in their brief that the trial proceeded with undue haste or without a proper consideration of the issues. The record discloses that all of the witnesses testified, who had an opportunity to know, and knew, of the terms and provisions of the claimed rental contract of the machinery. An affidavit for a continuance in an equity action like one for continuance in an ordinary action must show the materiality of the evidence expected to be obtained if the continuance is granted; due diligence had been used to obtain it; and if it be for an absent witness, the affidavit must show what facts the affiant believes the witness will prove, and not merely the effect of such facts in evidence; and that the affiant believes them to be true. Section 315, Civ. Code Prac.

It is needless to say that the Mulligans' affidavit fails to fulfill these requirements. The record discloses no error.

The judgment is affirmed.